[Civ. No. 6857. Fourth Dist. Dec. 28, 1962.]

CHARLES KELLY ROBINSON, Plaintiff and Appellant, v. ELMER SMITH et al., Defendants and Respondents.

476

Beardsley & Heap and Edward L. Heap for Plaintiff and Appellant.

King & Mussell and Stanley Mussell, Jr., for Defendants and Respondents.

GRIFFIN, P. Plaintiff-appellant Charles Kelly Robinson brought this action on May 6, 1960, against defendants and respondents Elmer Smith and City of Barstow, a municipal corporation, alleging in count one of the complaint that on June 17, 1959, defendant Smith, a police officer, willfully and maliciously shot plaintiff in the back, causing considerable injury and damage. In the second count, it is alleged that the City of Barstow acted through its agent, defendant Smith; that defendant Smith, while acting within the scope of his employment, willfully and maliciously shot plaintiff in the back. It then charged (1) that the city had knowledge that defendant Smith had a feeling of ill will toward plaintiff and city was negligent in failing to warn and instruct Smith to cease and desist further annoyance of plaintiff; (2) that Smith was of a quarrelsome and cruel nature and city negligently retained him on the police force; (3) that Smith, while a military police officer, attached to and working with the City of Barstow Police Department, had shot at another person without legal cause and defendant city knew this and was negligent in hiring a man of such nature; (4) that the City of Barstow was negligent in failing to instruct Smith in his duties; and (5) that city was negligent in failing to inform Smith about the laws in respect to the reasonable force that may be used in connection with self-defense.

Defendants answered the complaint, denied generally these allegations, and claimed self-defense, and alleged plaintiff broke away from the officer while under arrest by him and did flee from custody. By stipulation, plaintiff was allowed to file an amended complaint on November 29, 1960. It added, as parties defendants, five city councilmen. Count one alleged the same injury to plaintiff by defendant Smith. Count two incorporated the allegations of count one, and count three alleged generally as against the city the five claimed acts of negligence above mentioned, that plaintiff was damaged thereby and that plaintiff, on September 15, 1959, filed a claim with the clerk of the city council for such damage. In a claimed fourth cause of action against the individual city councilmen, it is alleged that Smith negligently shot plaintiff and the city councilmen had notice of Smith's inefficiency and that they were negligent in appointing him. Count five alleged negligence of the board of councilmen in retaining him in service under such circumstances. Count six alleged that the City of Barstow was negligent because its agent, Smith, in the performance of his duties and while acting within the scope of his employment, negligently shot and injured plaintiff. Damages were sought accordingly.

Defendants demurred to the amended complaint. The ruling thereon is not indicated in the record before us. On February 14, 1961, plaintiff filed a second amended complaint, omitting the five individual city councilmen and alleging in count one the general acts set forth in the former complaints against defendant Smith. In count two, it charged the City of Barstow was liable because of the five acts charged in the first complaint and that a claim was duly filed. Count three, as against the city, alleges that defendant Smith's negligent act of shooting plaintiff was in the performance of Smith's duties and within the scope of his employment (under the theory of *respondeat superior*) and incorporates therein the allegations in count one. Demurrers to the second amended complaint were based upon the grounds that the complaint did not state a cause of action and, additionally, as to the third count, that the cause of action was barred by Code of Civil Procedure, section 340, subdivision 3. The court overruled the demurrer as to the first cause of action as to defendant Smith, and sustained it without leave to amend as to the second and third causes of action against the city. Judgment of dismissal as to the City of Barstow on the second

478

and third causes of action followed. Plaintiff appeals from that judgment.

Plaintiff first complains because the court, in sustaining the demurrers, did not recite its reason therefor. (Citing *Blair* v. *Mahon,* 104 Cal.App.2d 44, 49 [230 P.2d 832]; *Taliaferro* v. *Salyer,* 162 Cal.App.2d 685, 688 [328 P.2d 799].) Plaintiff ''guesses'' that if the court sustained the demurrer thereto on the doctrine of sovereign immunity, such doctrine no longer obtains in California. (Citing *Muskopf* v. *Corning Hospital Dist.,* 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457].) Defendant city points out that prior to this decision, there was no question but that a city was not liable for the torts of its police officers. (Citing *Oppenheimer* v. *City of Los Angeles,* 104 Cal.App.2d 545 [232 P.2d 26]; 35 Cal.Jur.2d § 535, p. 320, and cases cited.) Defendant city states that the Legislature in 1961 enacted section 22.3 of the Civil Code, restoring the doctrine as it existed prior to the decision in the *Muskopf* case. ▆▆▆ The decision in *Corning Hospital Dist.* v. *Superior Court,* 57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325], held that the legislative enactment in 1961 was a rule of decision and suspended any cause of action existing under the decision in the *Muskopf* case until 1963 and might be reinstated if there was no further legislation on the subject. Such action by the Legislature was held not to be unconstitutional. It appears therefore that plaintiff's third count contains allegations that defendant Elmer Smith negligently shot the plaintiff in the course of his employment as a police officer by the defendant City of Barstow and alleges the filing of a claim with the clerk.

▆▆▆ In *Brindamour* v. *Murray,* 7 Cal.2d 73, 78 [59 P.2d 1009], it was stated: ''It is well settled that, in the absence of a statute voluntarily authorizing liability, the state, its municipal corporations, and other governmental units, are not liable in damages for the negligent acts of its officers, agents and employees in discharging duties pertaining to governmental functions. [Citing cases.] ▆▆▆ It is also taken as well settled that among the governmental functions of the city is the maintenance of a police department, including the operation of motor vehicles when used in the discharge of police departmental business. [Citing cases.]''

See also *Burnett* v. *City of San Diego,* 127 Cal.App.2d 191 [273 P.2d 345, 47 A.L.R.2d 1079]. In 35 California Jurisprudence section 535, page 321, it is said that a city is not liable in damages for a wrongful arrest and imprisonment by a police

officer, or for the taking and detention of property from the person arrested. Nor is it liable to prisoners for injuries inflicted during their imprisonment by the negligent or malicious acts of police or other officers; that in the performance of such functions and duties, such officers or agents are not the agents or servants of the municipality, but of the law, and the right of action for the tort is against them, not the municipality. However, under the Vehicle Code, a municipality is liable for the torts committed by its officers, agents and servants in the operation of motor vehicles in the discharge of city functions. (35 Cal.Jur.2d § 537, p. 323; Veh. Code, § 17001.)

"A municipality is liable for a tort committed by an officer or employee in the performance of duties resting on him in the exercise of the proprietary functions of the city." (35 Cal.Jur.2d § 538, p. 324.)

In *Oppenheimer* v. *City of Los Angeles, supra,* 104 Cal.App. 2d 545 [232 P.2d 26], it was held that a municipality, acting in a governmental capacity, cannot be held in damages for the torts of its police officers. In *Towle* v. *Matheus,* 130 Cal. 574 [62 P. 1064], a case where a deputy officer, in making an arrest, willfully shot the plaintiff in the back, it was held that where the officer, in making a lawful arrest, uses excessive and unnecessary force, he is liable upon his official bond for damages thereby caused to the person arrested. No attempt was made to include the County of Los Angeles as a party defendant. To the same effect is *Appier* v. *Hayes,* 51 Cal.App.2d 111 [124 P.2d 125], and *Abrahamson* v. *City of Ceres,* 90 Cal.App.2d 523 [203 P.2d 98], where the City of Ceres was held not liable for the negligent acts of its police officers acting in a governmental capacity. Maintenance and operation of a police department are governmental functions. (*Henry* v. *City of Los Angeles,* 114 Cal.App.2d 603 [250 P.2d 643].) (See also 60 A.L.R. 2d pp. 875-880; Prosser on Torts (2d ed.) pp. 780-784.) For the reasons and authorities heretofore stated, no cause of action was stated on the theory of *respondeat superior* against the defendant City of Barstow, under the law as it existed prior to the *Muskopf* decision.

In this connection, it is further argued, as to count three, that Code of Civil Procedure, section 340, subdivision 3, prescribes a limitation period of one year; that appellant's original complaint sought recovery against defendant city for negligent hiring and retention only, alleging that the conduct of defendant Smith was willful and malicious; that

after the year had expired, plaintiff, for the first time, alleged that the conduct of defendant Smith was negligent and was committed in the course of his employment by defendant city.

It is, of course, true that an amended complaint filed after the statute has run will not be subject to the bar of the statute of limitations where it merely corrects defects in the original pleading. However, it will be barred if it attempts to assert another and distinct and new cause of action. (*Dubbers* v. *Goux,* 51 Cal. 153, 155; *Klopstock* v. *Superior Court,* 17 Cal.2d 13, 20 [108 P.2d 906, 135 A.L.R. 318]; *Frost* v. *Witter,* 132 Cal. 421 [64 P. 705, 84 Am.St.Rep. 53].)

Upon an examination of the original complaint, it does allege that defendant city acted through its agent and servant, Officer Smith, who was acting within the scope of his authority for defendant city, and who while so acting maliciously shot plaintiff. Apparently the original complaint improperly alleged two different theories of action against the city in one count, and as a result of the filing of the second amended complaint they have been properly separated into separate counts. Where the amended complaint merely corrects defects in the original pleading of the same cause, and there is no change in the general set of facts or nature of the case, the amendment may be made after the limitation statute has run and the amended complaint is deemed filed as of the date of the original complaint. (*Wennerholm* v. *Stanford Univ. Sch. of Med.,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]; *Day* v. *Western Loan & Bldg. Co.,* 42 Cal.App.2d 226 [108 P.2d 702]; *Klopstock* v. *Superior Court, supra,* 17 Cal.2d 13, 20; *Panos* v. *Great Western Packing Co.,* 21 Cal.2d 636, 638 [134 P.2d 242].) It does not appear that defendant's argument in this respect is meritorious.

It is next argued by plaintiff that an employer may be charged with negligence in employing, or retaining in employment, a person who is known to be, or should have been known to be, unfit for the job. (Citing *Still* v. *San Francisco etc. Ry. Co.,* 154 Cal. 559 [98 P. 672, 129 Am.St.Rep. 177, 20 L.R.A. N.S. 322].) It is the rule that while superior public officers generally are not liable for the torts of their subordinates, where such subordinates are likewise public employees, a superior officer is liable if, having the power and duty of removal, he negligently fails to discharge a known unfit subordinate. In the *Still* case, it was held that a city manager and chief of police may be held

liable in damages for unlawful acts of incompetent and brutal police officers on the theory of negligent retention of such subordinates, although such officers, on suspension or removal, would have a right of appeal to a civil service board, where the power and duty to initiate any action leading to such removal are vested exclusively in those superior officers. (*Fernelius* v. *Pierce*, 22 Cal.2d 226 [138 P.2d 12].) See also *Whaley* v. *Jansen*, 208 Cal.App.2d 222 [25 Cal.Rptr. 184]; *Whaley* v. *Kirby*, 208 Cal.App.2d 232 [25 Cal.Rptr. 50]; Government Code, section 1954.

The second cause of action is directed against the City of Barstow and not against any particular officer thereof. ▮ In 63 Corpus Juris Secundum section 775, page 80, it is said: "A governmental function is exercised in the selection, employment, and retention in office of a police officer; and, except under statute, a municipality is not liable for negligence in selecting and appointing, or retaining in office, a police officer who is known, or by the exercise of reasonable care should be known, to be incompetent or vicious."

In *Henry* v. *City of Los Angeles, supra,* 114 Cal.App.2d 603, it was held that a municipal corporation is not liable, in the absence of a special statute rendering it liable, for the torts of its agents in the performance of governmental as distinguished from proprietary functions, and that the maintenance and operation of a police department are governmental functions. In *Lipman* v. *Brisbane Elementary Sch. Dist.,* 55 Cal.2d 224 [11 Cal.Rptr. 97, 395 P.2d 465], our Supreme Court held that a school district is immune from tort liability for the alleged acts of its trustees within the scope of their authority, and familiar principles of agency preclude its liability for acts outside the scope of their authority. Accordingly, the complaint therein did not state a cause of action in tort against the *district*. However, the court held that the complaint did state a cause of action against the trustees individually. In *Chappelle* v. *City of Concord,* 144 Cal.App.2d 822, 825 [301 P.2d 968], it was held that: "No cause of action against the City is stated in either complaint because in the governmental function here involved it is protected against tort liability by the *sovereign immunity.*" (Italics ours.) ▮ *Fernelius* v. *Pierce, supra,* 22 Cal.2d 226, was an action against *individual* superior officers of the tortfeasor. It was said in that case that sovereign immunity does not extend to such officers.

The allegations of the amended complaint are that Elmer Smith, *willfully* and *maliciously* shot plaintiff; that while on duty as a police officer he negligently shot plaintiff while performing and acting within the scope of his assigned duties. Counsel for defendant city argues that the *Muskopf* case, *supra*, while purporting to discard the rule of governmental immunity, recognized its existence where *discretionary* conduct of governmental officials, as opposed to *ministerial* conduct, is involved (citing *Lipman* v. *Brisbane Elementary Sch. Dist.*, *supra*, 55 Cal.2d 224), and that the act of a police officer in shooting someone while on duty is a discretionary rather than a ministerial act. (Citing *Hardy* v. *Vial*, 48 Cal.2d 577 [311 P.2d 494]; *Coverstone* v. *Davies*, 38 Cal.2d 315 [239 P.2d 876]; *White* v. *Towers*, 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R. 2d 636].) It might well appear from the *Muskopf* case that whether the city acted in a proprietary or governmental capacity is no longer the test, but that the test now resolves itself into the question of whether the act was a discretionary act or whether it was a ministerial act within the scope of its authority. At page 220 of the *Muskopf* decision (55 Cal.2d 211), the opinion recites:

"Although it 'is not a tort for Government to govern' . . . and basic policy decisions of government within constitutional limitations are therefore necessarily nontortious, it does not follow that the state is immune from liability for the torts of its agents. These considerations are relevant to the question whether in any given case the state through its agents has committed a tort . . . but once it is determined that it has, it must meet its obligation therefor.

"Nor does our decision herein affect the settled rules of immunity of government officials for acts within the scope of their authority. Moreover, since defendant's employees are not immune from liability for their negligence in caring for and treating plaintiff, the question of the extent to which the state should be immune when its officers are is not involved in this case. . . .

 "Government officials are liable for the negligent performance of their *ministerial* duties . . . but are not liable for their *discretionary* acts within the scope of their authority . . . even if it is alleged that they acted maliciously [citing cases]. . . . Thus this immunity rests on grounds entirely independent of those that have been advanced to justify the immunity of the state from liability for torts for which its agents are admittedly liable." (Italics added.)

This differentiation of liability is discussed in Prosser on Torts, (2d ed.) chapter 24, section 109, paragraph c, page 770. The great difficulty that now arises is the question whether the act performed may be classified as discretionary or ministerial. (Prosser on Torts (2d ed.) ch. 24, pp. 782-783, and cases cited.) A close question presents itself in this respect. The "discretionary" and "ministerial" rule here adopted appears in the Federal Tort Claims Act, 28 U.S.C.A., §§ 2671-2680. (See also 91 C.J.S. § 118, pp. 291-300.)

In *Lipman* v. *Brisbane Elementary Sch. Dist.,* *supra,* 55 Cal.2d 224, being an action against the district, three trustees and others for claimed wrongful interference with plaintiff's contract for performance of services, the Supreme Court, in connection with the *Muskopf* case, held that the rule of governmental immunity may no longer be invoked to shield a public body from liability for the torts of its agents who acted in a *ministerial* capacity. But it does not necessarily follow that a public body has no immunity where the *discretionary* conduct of governmental officials is involved; that while a governmental agent is personally liable for torts which he commits when acting in a ministerial capacity, a different situation exists with respect to discretionary conduct. Because of important policy considerations, the rule has become established that government officials are not personally liable for their discretionary acts within the scope of their authority, even though it is alleged that their conduct was malicious. (Citing cases.) The school district in that case was absolved from liability under these facts as being of a *discretionary* character.

It is not clear from the complaint, under count two, whether the City of Barstow had a chief of police under whom defendant Smith was employed or whether the city council alone employed him, or who was authorized to discharge him. In *Fernelius* v. *Pierce, supra,* 22 Cal.2d 226, neglect of duty in this respect was chargeable against the *officer* employing him or who had authority to discharge him, but not against the city. The allegation in the instant case is that defendant city employed Smith. If the relationship of a city and its employees is to be similar to civil liability of private corporations, then the holding in *Still* v. *San Francisco etc. Ry. Co., supra,* 154 Cal. 559, would be applicable.

The question then arises: Is the employment by the city of police officers, or their discharge, a ministerial duty or a discretionary matter, and whether under the third count (*respond-*

*eat superior*), the action of defendant Smith in shooting plaintiff in the back was not a discretionary act which would place liability on the city.

It is true that defendants' answer filed to the first complaint did allege that the shooting was in self-defense and was occasioned by plaintiff's own wrongful acts and that while acting as a police officer of Barstow defendant Smith lawfully placed plaintiff under arrest for the commission of a crime and that plaintiff broke free from Smith's custody and fled, and the shooting was necessary for the preservation of the peace and enforcement of the law. Of course these allegations of the answer may not be considered under the circumstances here presented where an amended complaint was thereafter filed and a demurrer to it was sustained without leave to amend. (*Metropolitan Life Ins. Co.* v. *Rolph,* 184 Cal. 557 [194 P. 1005]; 2 Cal. Pleading § 1166, p. 393.)

The complaint merely charged that defendant Smith, while on duty, willfully and maliciously shot plaintiff in the back, in the performance of his assigned duties. Under these bare allegations, and without considering the answer filed, it does not affirmatively appear that Smith's action shows, as a matter of law, that he was performing a discretionary act sufficient to relieve the city of liability under the decision in *Muskopf* v. *Corning Hospital Dist., supra,* 55 Cal.2d 211.

The effect of the enactment of the new section 22.3, Civil Code, on the prior decisions is not entirely clear. In an article in volume 36, Journal of the State Bar of California (by Richard H. Perry), at page 77, it is stated:

"Governmental agencies can no longer enshroud themselves in the mantle of 'sovereignty' against their just obligations for injuries or damage caused by the ministerial acts of their agents, nor shield themselves against *any* responsibility for the torts of their officials committed in the performance of their discretionary duties. . . .

"This does not mean, however, that injured persons can as a matter of course and in all instances maintain actions for compensation against governmental agencies. Rather, the preliminary determination of whether there is liability is dependent on different factors than were heretofore pertinent.

". . . . . . . . . . .

"Under the present state of the law, it is immaterial whether or not the governmental agency is proprietary or

governmental. The pertinent question is: 'What is the nature of the agent's conduct?' If the conduct is ministerial, the potential liability of the governmental agency is clear. If, on the other hand, the act which produced injury or damage might be classified as 'discretionary,' then it will be necessary to attempt to determine whether or not such act confers 'immunity' on the officer alone, or on both the officer and the agency.

". . . . . . . . . . . . .

"Notwithstanding the difficulties which may be anticipated in formulating the proper and necessary criteria for the simple determination of what conduct will impose liability on governmental entities, there is at least a broad area in which any attempt to defend on the ground that the conduct was 'discretionary' and conferred immunity on the governmental agency would be a patent absurdity. . . .

"While it will no doubt take time to formulate the rules, it can certainly be said that the most difficult questions to settle will be: Under what circumstances the officer is to be afforded governmental immunity, and the governmental agency is not."

Further discussion is continued in volume 36, Journal of the State Bar of California, pages 661-662. In analyzing the *Muskopf* and *Lipman* decisions, it states that by way of exclusion, the Legislature declared void all causes of action that arose prior to February 27, 1961. ▇▇▇ Serious constitutional questions confront this segment of the section. However, in *Corning Hospital Dist.* v. *Superior Court, supra,* 57 Cal.2d 488, 494, it was said, in reference to a cause of action accruing before February 27, 1961: "It is our view, however, that the intent to do nothing more than suspend such causes of action is shown by the provision of section 3. . . ."

▇▇▇ In *Lipman* v. *Brisbane Elementary Sch. Dist., supra,* 55 Cal.2d 224, it was said that although it may not be possible to set forth a definite rule which would determine in every instance whether a governmental agency is liable for discretionary acts of its officials, various factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which governmental liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages. It therefore appears that a factual question may well arise in the instant case as to whether plain-

tiff may ultimately recover against the city on the causes of action stated. ▇▇▇ In the recent case of *Thelander* v. *Superior Court,* 58 Cal.2d 811 [26 Cal.Rptr. 643, 376 P.2d 571], petitioners filed a negligence action against the State of California. Over objections by petitioners, the state's time to plead to the complaint was extended until 30 days after the 91st day after final adjournment of the 1963 Regular Session of the Legislature. Petitioners then brought a proceeding asking that writ of certiorari issue and that the order extending time to plead be annulled. It was annulled. It reiterated the provisions of the *Corning Hospital Dist.* v. *Superior Court* decision (57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325]), in reference to procedure, and stated that in the interim the parties may file pleadings if they so desire and may resort to a proceeding for the discovery and perpetuation of evidence in accordance with sections 2016 et seq. of the Code of Civil Procedure. It stated that the language in the *Corning* case cannot properly be interpreted to change the ordinary rules of procedure governing the filing of responsive pleadings; that as to whether plaintiffs could file their complaints immediately or must wait until the expiration of the suspension period in 1963, the court determined that they could have a choice; that until the Legislature acts to change the substantive law relating to governmental immunity, the decision in *Muskopf* v. *Corning Hospital Dist., supra,* 55 Cal.2d 211, was the law and its effect was merely suspended by the 1961 legislation and that it follows *that a demurrer on the ground of governmental immunity should be overruled in any case coming within the Muskopf rule* and that governmental bodies should be required to answer, and that if additional legislation is enacted during the moratorium period making governmental immunity applicable in such cases, a judgment on the pleadings would be proper.

Under the present pleadings and state of the law, it appears that the order sustaining the demurrer without leave to amend as to counts two and three was erroneous and should be reversed and the court directed to overrule the demurrer and allow defendant to answer within a reasonable time.

Judgment reversed accordingly.

Shepard, J., and Coughlin, J., concurred.

The petition of respondent City of Barstow for a hearing by the Supreme Court was denied February 20, 1963.