Margaret GRAVES, Individually and as parent and next friend of minor, Linwood Lawrence Graves, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 5086.

District of Columbia Court of Appeals.

Argued March 24, 1970.

Decided Feb. 17, 1972.

Opinion vacated April 3, 1972.

Steven M. Cooper and Marvin E. Preis, Washington, D. C., were on the brief for appellant.

Leo N. Gorman, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel at the time the brief was filed, Hubert B. Pair, Principal Asst. Corp. Counsel at the time the brief was filed, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

C. Thomas Dienes, Washington, D. C., amicus curiae, appointed by this court, of the bar of the Supreme Court of Illinois.

Before KELLY, FICKLING and NEBEKER, Associate Judges.

KELLY, Associate Judge:

This appeal is from the dismissal of a complaint filed by appellant Margaret Graves, individually, and as next friend of her minor son, against the District of Columbia, demanding compensation for injuries resulting from an alleged assault and battery on, and false arrest of the son by Metropolitan police officers. The District, sued on the theory of *respondeat superior*, raised the defense of sovereign immunity by motion to dismiss and the motion was granted. We reverse.

The case was originally submitted to this court in March of 1970, prior to the effective date of the District of Columbia Court Reform and Criminal Procedure Act,[1] with the request that our decision abide the outcome of a similar case pending in the Circuit Court of Appeals. The opinion in that case, Carter v. Carlson,[2] ultimately issued on July 23, 1971, beyond the effective date of the Court Reform Act. As we were then free to either accept or reject the holding in *Carter*,[3] we requested oral argument from the parties and appointed an amicus curiae to assist the court.[4]

The District of Columbia faults the *Carter* decision in only one respect, the

---

1. Pub.L.No.91–358 (1970).

2. D.C.Cir., 447 F.2d 358 (1971), cert. granted sub nom. District of Columbia v. Carter, 404 U.S. ——, 92 S.Ct. 683, 30 L.Ed.2d 661 (Jan. 10, 1972).

3. *See* M.A.P. v. Ryan, D.C.App., 285 A.2d 310 (No. 5939, decided December 29, 1971).

4. The court expresses its appreciation to amicus curiae for the excellent brief filed herein.

failure of the court to rule that the District is not liable to respond in damages, under the theory of *respondeat superior,* for the intentional torts of its police officers acting within the scope of their employment to the same extent as the United States is immune from liability under the Federal Tort Claims Act.[5] This precise point was urged in *Carter* and rejected by the court.[6] We similarly reject it here. That the District might be liable for the intentional torts of its police officers appears to have been recognized prior to *Carter,* Thomas v. Johnson, 295 F.Supp. 1025 (D.D.C.1968) (suit based in part on assault and battery),[7] and the legal principle has since been reaffirmed in a suit against correctional officers. Baker v. Washington, D.C.Cir., 448 F.2d 1200 (1971). Accordingly, following the pertinent holding of Carter v. Carlson,[8] the order of the trial court is

Reversed with instructions to reinstate the complaint.

NEBEKER, Associate Judge (dissenting):

I am compelled to dissent from the adoption by this court of a new rule of law respecting sovereign liability of what in reality is the United States. My disagreement is not confined to the way in which my colleagues read or apply Carter v. Carlson, D.C.Cir., 447 F.2d 358 (1971), cert. granted sub nom. District of Columbia v. Carter, 404 U.S. ——, 92 S.Ct. 683, 30 L.Ed.2d 661 (Jan. 10, 1972), since to me that opinion reached a result which is contrary to congressional reservation of sovereign immu-

nity as recognized in Spencer v. General Hospital, 138 U.S.App.D.C. 48, 425 F.2d 479 (1969). ·Carter is also founded upon unproved and questionable assumptions respecting the effective function of law enforcement and the operation of our police. I do agree with the majority, however, that we are free to reject the holding in Carter,[1] decided as it was after February 1, 1971, and I would.

Because the instant case presents a question of exceptional importance under Rule 40(c) of the rules of this court, it is appropriate for rehearing *in banc.* A suggestion to that effect would put the question properly before the full court. I also note that the United States Supreme Court has granted the petition for certiorari filed in Carter v. Carlson, *supra.* The issue there raised of the applicability of 42 U.S.C. § 1983 (1970) to the District of Columbia may well encompass the general question of sovereign liability as decided in *Carter* in addition to the narrower question whether the District of Columbia is a "person" under section 1983. In this connection, I note with some surprise an apparent inconsistency between what the District of Columbia argued in this court and in its Petition for Writ of Certiorari. Here, the District of Columbia argued, and I agree, that the reservation of immunity found in 28 U.S.C. § 2680 (1970) derivatively applies to bar the instant action. Spencer v. General Hospital, *supra,* recognized and followed this policy respecting so-called discretionary torts under section 2680(a). The District of Columbia urges us to follow that concept by applying the same rationale to so-called intentional torts under

---

5. Under 28 U.S.C. § 2680(h), the United States is immune from "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

6. 447 F.2d 358, 366 (1971).

7. *See also* Graham v. District of Columbia, 139 U.S.App.D.C. 378, 433 F.2d 536

(1970) (suit based in part on false arrest).

8. We are here presented only with a suit against the District of Columbia on the theory of *respondeat superior* and are not concerned with any issue of official immunity or independent negligence of the District.

I. *Cf.* M.A.P. v. Ryan, D.C.App., 285 A.2d 310 (No. 5939, decided December 29, 1971).

section 2680(h). Yet in its petition to the Supreme Court it said:

> "*It is true,* as the circuit court of appeals recognized, that, at the time the action was filed, *respondent was entitled to proceed against petitioner* in the United States District Court for the District of Columbia *on a common-law theory, . . .* " [Emphasis added.] [Petition at 6.]

Presumably the District of Columbia will clarify its position to the extent that it adheres to the argument made before this court.

The importance attaching to the holding in this case, as in *Carter,* is its unqualified application [2] to all instances in which it is determined that police conduct did not meet constitutional standards regardless of whether that conduct arose from an honest, but erroneous, effort to perform a duty or from flagrant or calculated abuse of police power.[3] Moreover, the majority in following *Carter* exacerbates the anomaly created by this divergent application of the immunity doctrine (depending on who makes the arrest—a District of Columbia

policeman or an officer of one of the many other United States law enforcement agencies operating here) and creates the appearance, if not the fact, of unequal application of the law.

In Spencer v. General Hospital, *supra,* the United States Court of Appeals was quite properly influenced by the retention of immunity for discretionary torts under the Federal Tort Claims Act.[4] 28 U.S.C. § 2680(a) (1970). The court compared the developments in *Spencer* with the principles found under the Federal Tort Claims Act. Indeed, the result in *Spencer* was in complete harmony with the expressed intent of Congress as seen in the Act. In *Carter* the United States Court of Appeals specifically recognized that the *Spencer* decision was influenced by the Federal Tort Claims Act in adopting the test set forth for sovereign immunity in the area of discretionary torts. Without an articulated basis, that court rejected the application of the principles of the Act to intentional torts.[5] It is inescapable to me that *Spencer* declares the law to be that the congressional policy revealed in section 2680 applies to suits against the District of Colum-

---

2. Carter v. Carlson, D.C.Cir., 447 F.2d 358 (1971), holds that any arrest without probable cause may constitute a tort. The opinion states, in pertinent part:

   "When a police officer makes an arrest without probable cause, or uses excessive force in making an arrest, his action is sufficiently cloaked with official authority to satisfy the limitation of the statute to wrongs performed under color of law. Such conduct invades an interest ordinarily protected both by the common law of torts, and by the Constitutional guarantee against unreasonable searches and seizures. . . . " [*Id.,* 447 F.2d at 361.] [Footnote omitted.]

   \* \* \* \* \*

   "An arrest without probable cause constitutes a tort at common law, as does the use of excessive force to make an arrest. . . . " [*Id.,* 447 F.2d at 362.] [Footnote omitted.]

   \* \* \* \* \*

   "While the arresting officer has no immunity, he may nevertheless assert, as a defense on the merits, that he made the arrest in good faith, with probable cause, under a statute that he reason-

ably believed to be valid. . . . " [*Id.,* 447 F.2d at 363 n. 9.]

   \* \* \* \* \*

   "We think it clear that an action under [42 U.S.C.] § 1983 may be based on negligence, if that negligence leads to a constitutional deprivation. . . . " [*Id.,* 447 F.2d at 365 n. 20.]

3. Indeed, it might even be argued that a successful motion to suppress in a criminal case decides the question of sovereign liability as between the person arrested (plaintiff) and the District of Columbia on the theory that the officer's presence in court in the criminal case would constitute an appearance of the District of Columbia. *See* Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 175–176, 417 F.2d 728, 743–744 (1969).

4. Because the District of Columbia was not specifically mentioned as being covered under the Federal Tort Claims Act, the principles and policies of the Act were indirectly applied to the District of Columbia.

5. 28 U.S.C. § 2680(h) (1970).

bia. Moreover, under the *Spencer* rationale, subsequent limited congressional action indicates that Congress has recognized the case law existence of sovereign immunity. *See* D.C.Code 1967, § 23–554(c) (Supp. IV, 1971) (where Congress expressly removed the immunity bar in the limited area of eavesdropping). *See also* Spencer v. General Hospital, *supra,* 138 U.S.App.D.C. at 53, 425 F.2d at 484 (regarding congressional inaction). It seems entirely inconsistent to utilize the express legislative intent of Congress for one kind of tort and not for another where both clearly fall within the nature of tort suits specifically reserved by Congress for sovereign immunity. I respectfully suggest that the court in *Carter* was wrong when it said, "The District of Columbia is immune from suit *only* for acts committed in the exercise of discretionary functions." *Id.,* 447 F.2d at 366 (emphasis supplied). The reservation of immunity for such torts in section 2680(a) is but one of a number of applicable subsections of that statute. Subsection (h) is clearly another and *Spencer* did not strike a limitation to subsection (a) alone.

Moreover, it is clear that resources to defend this suit and funds to pay any judgment against the District of Columbia must in the last analysis emanate from Congress. A decision which provides for conflicting results depending on whether the United States or the District of Columbia is being sued is to me an affected blindness to the fact that the funds utilized to satisfy a judgment in either case belong to the national treasury. Indeed, the intent of Congress has been to limit the hampering impact on certain government functions as well as the drain on the treasury in the types of tort actions delineated in section 2680.

Putting aside the purely fiscal considerations, which are a legitimate but perhaps a less appealing factor in deciding this case, I am compelled to question and disagree with an underlying and unproved assumption of the *Carter* decision. That is, that the efficiency of government will not be adversely affected by this extension of liability. It seems clear to me that proliferation of suits brought by many of those who are arrested will have an adverse impact on an already burdened police force.[6] While the courts must be vigilant to ensure constitutional police conduct, we should not bear down so hard as to further encourage police not to get "involved" or "take" decisive action—a regrettable symptom in society as demonstrated by frequent instances where citizens refuse to help a pathetic victim of crime or distress. As far as suits against police officers, the simple fact is that few are brought because of the inability ultimately to realize the amount awarded. This fact appears to be recognized in *Carter, supra,* 447 F.2d at 370. It does not follow that the efficiency of law enforcement, as a function of government, would be unaffected by an extension of liability to the District of Columbia. Obviously, more suits will be brought, thus more required explanation and exposure to criticism which will have a tendency to produce indifference and inaction by police. I cannot agree with that expressed assumption in the *Carter* opinion, 447 F.2d at 366–367, and in the concurring opinion, 447 F.2d at 370.

Chief Judge Learned Hand said of the policy and purpose of the law in official immunity:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether

---

6. The concurring opinion in *Carter, supra* note 2, recognizes that many groundless suits will result. *Id.,* 447 F.2d at 374.

the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books." Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949).

Indeed, Chief Justice Burger recently observed:

"Policemen do not have the time, inclination, or training to read and grasp the nuances of the appellate opinions that ultimately define the standards of conduct they are to follow. The issues that these decisions resolve often admit of neither easy nor obvious answers, as sharply divided courts on what is or is not 'reasonable' amply demonstrate. Nor can judges, in all candor, forget that opinions sometimes lack helpful clarity."

\*　\*　\*　\*　\*　\*

"Inadvertent errors of judgment that do not work any grave injustice will inevitably occur under the pressure of police work. . . ." Bivens v. Six Unknown Named Agents of Federal Narcotics Agents, 403 U.S. 388, 417–418, 91 S.Ct. 1999, 2015, 29 L.Ed.2d 619 (1971) (Burger, C. J., dissenting). [Footnote omitted.]

Significantly, the *Carter* decision itself is inherently inconsistent in its view of the act of making an arrest. The decision, of necessity, recognizes that "a *high degree* of discretion is *clearly* involved in deciding when and how to make an arrest". *Id.*, 447 F.2d at 363 n. 9 (emphasis supplied). Yet to achieve the desired result the court holds "that the act of making an arrest is ministerial". *Id.*, 447 F.2d at 366.

In the District of Columbia we have strayed too far from the path discussed by Chief Judge Learned Hand on the unfounded and dangerous assumption that this rule of law will have no adverse impact on the effectiveness of our police force. I suggest that the result achieved in the instant case and *Carter* was prompted so much by a desire for interment of the old rule that sound, time-honored policy considerations became obscured by strained if not fallacious reasoning.

The legislative authority and sovereignty for the District of Columbia lie wholly with the United States Government. A review of the creation of the District of Columbia and the historical developments leading to the District of Columbia's present status as a federal municipality was given by the Supreme Court in Metropolitan R. R. Co. v. District of Columbia, 132 U.S. 1, 10 S.Ct. 19, 33 L.Ed. 231 (1889). The concept of sovereignty, as it relates to the District of Columbia, was described in the following terms:

"It is undoubtedly true that the District of Columbia is a separate political community in a certain sense [for diversity purposes], and in that sense may be called a State; but the sovereign power of this qualified State is not lodged in the corporation of the District of Columbia, but in the government of the United States. Its supreme legislative body is

Congress. The subordinate legislative powers of a municipal character, which have been or may be lodged in the city corporations, or in the District Corporation, do not make those bodies sovereign. Crimes committed in the District are not crimes against the District, but against the United States. . . . " [*Id.* at 9, 10 S.Ct. at 22.]

*Cf.* United States v. Cella, 37 App.D.C. 423 (1911).

Offspring sovereignty has also been discussed recently by the Supreme Court in a double jeopardy context dealing with the relationship of municipalities and states. The Court held that municipalities do not have "dual sovereignty" with the states for the purpose of allowing successive prosecutions for the same offense by both political units. Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). Likewise, the Supreme Court has previously held that "dual sovereignty" did not exist between the territories and the federal government. Puerto Rico v. Shell Co., 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937); Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084 (1907). Although legislative power has been granted to territories for their exercise in partial self-government, Congress still retains the power to revise, alter or revoke such delegated powers. In this instance some attributes of sovereignty may pass to the territory. Harris v. Boreham, 233 F.2d 110 (3d Cir. 1956). However, where Congress chooses not to delegate legislative authority to a territory for self-government, it has been recognized that sovereignty remains with the United States. Pan American Standard Brands, Inc. v. United States, 177 F.Supp. 769 (Cust.Ct.1959).

The creation of the District of Columbia was in the first instance accomplished pursuant to the United States Constitution, the same document which established the national government. The Constitution provides that the exclusive legislative authority for the District of Columbia lies with Congress.[7] This being the case, any aspect of sovereignty that might be applied to the District of Columbia necessarily stems from the United States Constitution and the governing powers of Congress itself. Because the District of Columbia is exclusively the seat of the national government, sovereignty is only found in that governing entity and not its political subdivision. All applicable aspects of sovereign immunity that have been spelled out by Congress in the Federal Tort Claims Act should, as with discretionary torts in *Spencer,* derivatively apply to the District of Columbia.

In following the *Carter* decision the majority compounds an unseemly situation in which unequal application of the law is created. Law enforcement agencies authorized to function here in the District of Columbia include more than the Metropolitan Police Department as established under D.C.Code 1967, § 4–101 et seq. Many of the other law enforcement agencies created by Congress function on a local basis.[8] Indeed, it is not uncommon for officers of the Metropolitan Police Department to work jointly with other federal law enforcement officers in particular cases where arrests are made. It seems to me that it is inappropriate for courts to act in a quasi-legislative way[9] and allow a

---

7. U.S.Const. art. I, § 8, cl. 17.

8. The Capitol Police and the Smithsonian Institute Police (including the National Zoological Park Police) function on strictly local matters wholly within the District of Columbia. The Executive Protective Service (including White House Police), the General Services Administration security force, and the United States Park Police function principally within the District of Columbia.

Agents from the Federal Bureau of Investigation, Secret Service, and Federal Narcotics and Dangerous Drug Administration often perform law enforcement duties within the District of Columbia.

9. Carter v. Carlson, *supra* note 2, 447 F.2d at 374 (concurring opinion); Spencer v. General Hospital, 138 U.S.App.D.C. 48, 53, 425 F.2d 479, 484 (1969).

plaintiff to bring suit against the government for damages arising out of alleged tortious conduct of members of the Metropolitan Police Department where sovereign immunity bars suit against the government for the same torts of fellow law enforcement officers in other federal agencies functioning in the same jurisdiction. Such a result, in this era of increased incidents of law enforcement activity and mass demonstrations requiring cooperative law enforcement activity between both United States and District of Columbia agencies, has the very real effect of unequal application of the law.

I respectfully dissent.