Coolidge WADE, Individually and as uncle and next friend of minor, Linwood Lawrence Graves, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 5086.

District of Columbia Court of Appeals.

Argued En Banc Oct. 26, 1972.

Decided Oct. 17, 1973.

17. Appellants' brief at 12.

Steven M. Cooper and Marvin E. Preis, Silver Spring, Md., were on the brief for appellant.

Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

C. Thomas Dienes, Washington, D. C., amicus curiae, appointed by this court, of the bar of the Supreme Court of Illinois.

Robert A. W. Boraks, Washington, D. C., amicus curiae, American Civil Liberties Union Fund, with whom Ralph J. Temple, Washington, D. C., was on the brief.

Before REILLY, Chief Judge, and KELLY, FICKLING, KERN, GALLAGHER, NEBEKER, YEAGLEY and HARRIS, Associate Judges.

KELLY, Associate Judge:

Some years ago Margaret Graves, individually and as next friend of Linwood Lawrence Graves, her minor son, sued the District of Columbia on a complaint charging it, through several of its police officers, with an assault and battery on and a false arrest of the minor plaintiff. Thereafter, the complaint was dismissed upon motion of the District interposing the defense of governmental immunity. After submission without argument of an appeal from that order of dismissal, and at the suggestion of the litigants, this court deferred decision on the merits pending the outcome of a similar case, Carter v. Carlson,[1] then under consideration by the United States Court of Appeals for the District of Columbia Circuit. When the Carter decision issued,[2] we requested and had oral argument on particular supplemental questions posed to the parties and thereafter reversed the judgment of dismissal with instructions to reinstate the complaint. Graves v. District of Columbia, D.C.App., 287 A.2d 524 (1972).[3] Upon petition of the District for a rehearing en banc, the court's panel opinion was vacated and the case reheard by the full court.[4]

It should be kept in mind that, unlike Carter, our discussion of the merits of this case deals with a complaint against a single defendant—the District of Columbia— premised on a single theory of recovery— the District's liability under the doctrine of respondeat superior for the intentional torts of its police officers committed while acting within the scope of their employment. The issue of official immunity is not present in the case and is not discussed.[5] Our only concern is whether or not, taking as we must the allegations contained therein to be true, the complaint states a claim against the District upon which relief may be granted.

The allegations of the complaint are that about 11 p. m. on a February evening, as the minor plaintiff was leaving a party, several District of Columbia police officers, acting within the scope of their employment, assaulted him without justification or probable cause, to his severe injury. It is further alleged that the minor plaintiff was thereafter unlawfully arrested and maliciously deprived of his physical liberty. Each plaintiff sought compensatory damages in the sum of $5,000.

The government's motion to dismiss was based on the contentions that the maintenance of a police department is a governmental function and that police officers are not agents of a municipal corporation. The District also argued that because Congress had consciously excluded it from the application of the Federal Tort Claims Act,[6] the only statutory exception to its

1. 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), rev'd in part sub nom. District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

2. The decision came down on July 23, 1971, after the effective date of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91-358, 84 Stat. 473, approved July 29, 1970. See M. A. P. v. Ryan, D.C.App., 285 A.2d 310 (1971).

3. The District of Columbia chose to appeal the question of its liability under 42 U.S.C. § 1983 (1970) to the United States Supreme Court and to present anew to this court the question of its common law tort liability for the intentional torts of its police officers. The circuit court has recently reaffirmed its Carter theory of common law liability in Marusa v. District of Columbia,

et al., 484 F.2d 828 (D.C.Cir., Nos. 72-1027, 72-1140).

4. By this time Margaret Graves was deceased and Coolidge Wade had been substituted as next friend of the minor plaintiff.

5. Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), is a leading case on the issue of official immunity, an immunity which "rests on grounds entirely independent of those that have been advanced to justify the immunity . . . from liability for torts for which its agents are admittedly liable." Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 95, 359 P.2d 457, 463 (1961) (en banc). See Craig v. Cox, D.C.Mun.App., 171 A.2d 259 (1961), aff'd, 113 U.S.App.D.C. 78, 304 F.2d 954 (1962).

6. 28 U.S.C. § 2671 et seq. (1970).

immunity from suit was D.C.Code 1967, § 1–922, the District of Columbia Non-Liability Act.[7] The trial court granted the motion without comment.

■ Without question the operation of a police force is a governmental function.[8] However, the much abused and much criticized "governmental-proprietary test" used for many years in this jurisdiction to determine municipal immunity from suit was permanently discarded by the circuit court en banc in Spencer v. General Hospital of District of Columbia, 138 U.S.App.D.C. 48, 425 F.2d 479 (1969), where in commenting upon an even earlier decision, Elgin v. District of Columbia, 119 U.S.App.D.C. 116, 337 F.2d 152 (1964), the court said:[9]

We did not [there] feel inhibited, however, from probing the emerging formulations of the municipal immunity principle and, in particular, we remarked the trend, in this jurisdiction as elsewhere, towards an analysis which looked to the nature of the function being performed by a municipality and which did not stop short at a finding of the governmental character of the activity in question. We found that the articulation of the immunity test in terms of "governmental," as opposed to "proprietary," functions had increasingly lost its vitality as an accurate or adequate rationale for the immunity privilege. . . .

■ Since Elgin, a different and more logical "ministerial-discretionary" test has been applied as a yardstick for measuring the availability of the defense of immunity, discretionary functions being those "of such a nature as to pose threats to the quality and efficiency of government in

the District if liability in tort was made the consequence of negligent act or omission."[10] Under this standard the District is immune from suit only if the act complained of was committed in the exercise of a discretionary function; if committed in the exercise of a ministerial function the District must respond. Baker v. Washington, 145 U.S.App.D.C. 277, 448 F.2d 1200 (1971); Carter v. Carlson, supra; Spencer v. General Hospital of District of Columbia, supra; Elgin v. District of Columbia, supra.

■ Proceeding from general principles to the facts of this case, we think it settled that for immunity purposes the act of making an arrest is ministerial. Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc., 456 F.2d 1339 (2d Cir. 1972); Carter v. Carlson, supra; Sherbutte v. Marine City, 374 Mich. 48, 130 N.W.2d 920 (1964). Thus, as we have pointed out, the federal circuit court has recognized that, based on the actions of its employees, the District of Columbia is amenable to suit for assault and battery and/or false arrest and imprisonment. Carter v. Carlson, supra; Graham v. District of Columbia, 139 U.S.App. D.C. 378, 433 F.2d 536 (1970). It has also cited with approval the opinion of a federal District judge who wrote:

Nor is the District of Columbia necessarily immune from suit as principal for the intentional torts of its agent police officers, so long as the applicable "scope of employment" rules can be proved at trial to apply to the facts of the instant case. Cf. Hargrove v. Town of Cocoa Beach, 96 So.2d 130, 133 (Fla.1957). Those jurisdictions which have considered this aspect of the problem have held

---

7. This Act permits suits against the District of Columbia for damages arising from traffic accidents with District vehicles.

8. Adams v. District of Columbia, D.C.Mun. App., 122 A.2d 765 (1956); Savage v. District of Columbia, D.C.Mun.App., 52 A.2d 120 (1947).

9. Spencer v. General Hospital of District of Columbia, supra, 138 U.S.App.D.C. at 50, 425 F.2d at 481.

10. Id. at 51, 425 F.2d at 482. For a comprehensive discussion of the development and demise of the doctrine of governmental immunity in an ever increasing number of states, see Ayala v. Philadelphia Board of Public Education, 305 A.2d 877 (Pa.1973).

that the action of a police officer in making an assault upon a citizen is not a discretionary act, but is merely ministerial. Robinson v. Smith, 211 Cal.App.2d 473, 27 Cal.Rptr. 536, 541 (1962). Cf. Sherbutte v. Marine City, 374 Mich. 48, 54–55, 130 N.W.2d 920, 923 (1964). We believe this is a sound determination. Similarly, we believe that when our Court of Appeals adopted the discretionary-ministerial distinction in the area of sovereign immunity, it did not intend that the distinction be limited to cases of negligent torts, or it would have made an explicit holding to that effect. See Simpson v. City of Miami, 155 So.2d 829 (Fla.Dist.Ct.App.1963). The discretionary-ministerial distinction applies to cases of intentional, as well as negligent torts.[11]

■ Despite this impressive authority, the District now contends that its liability in tort is limited to the same extent as that of the federal government under the Federal Tort Claims Act. After many years of litigation in which the District consistently maintained that its immunity from suit was broader than that of the federal government,[12] it now argues that as a municipality it has no immunity per se but only that derived from the sovereign United States. This notion is contrary to the common law theory of municipal governmental immunity as it has developed in the case law of this jurisdiction. It is belied by the fact that in the one instance where the District's immunity was expressly waived, it was by an act of Congress enacted many years after the passage of the Federal Tort Claims Act. Moreover, the identical argument was made to the circuit

court in *Carter* and was rejected by that court in the following language:[13]

The District urges us to limit the rule of *Spencer* to cases involving negligence, and to hold the municipal government completely immune from suit for the intentional torts of its employees.

In *Spencer* we indicated that we were influenced by the provisions of the Federal Tort Claims Act, 28 U.S.C. § 2680(a), in adopting "discretion" as the hallmark of acts protected by sovereign immunity. 138 U.S.App.D.C. at 53 & n. 7, 425 F.2d at 484 & n. 7. We are now urged to follow the Act again, and to adopt a rule of immunity for intentional torts, whether discretionary or ministerial in character. See 28 U.S.C. § 2680(h). We made it clear in *Spencer*, however, that the Act does not in any way control the character of sovereign immunity in the District of Columbia; the developing common law of the District is neither precluded from adopting principles contained in the Act, nor required to do so. [Footnote omitted.]

The provision of the Act asserting the immunity of the United States with respect to certain intentional torts has been subject to severe and persuasive criticism. See, e. g., K. Davis, Administrative Law Treatise § 25.08 (1958, Supp. 1970). In the absence of legislation, we see no reason to incorporate that immunity into the law of the District. When a tort is made possible only through the abuse of power granted by the government, then the government should be held accountable for the abuse, whether it is negligent or intentional in character.

---

11. Thomas v. Johnson, 295 F.Supp. 1025, 1032 (D.D.C.1968), cited with approval in Carter v. Carlson, *supra*. *See also* City of Miami v. Simpson, 172 So.2d 435 (Fla.1965).

12. In *Spencer*, for instance, it argued that since Congress failed to include the District in the Federal Tort Claims Act, the legislature meant for it to retain full tort immunity.

13. Carter v. Carlson, *supra*, 144 U.S.App. D.C. at 396, 447 F.2d at 366. *See also* Parish v. Pitts, 244 Ark. 1239, 429 S.W.2d 45, 51 (1968). It is, of course, incorrect to say, as does the dissent, that the *Carter* division holding is contrary to the expression of the full court in *Spencer*.

Accordingly, we reject the suggestion that the District is immune from suit for the intentional torts of its employees.

As Judge Prettyman explained in *Spencer,* while still of the view that the elimination of the defense of sovereign immunity in tort cases against the federal government was a matter of legislative policy:

> But the immunity of the local municipal corporation from liability for torts committed by it or its agents in the course of the performance of duties imposed by statute is quite a different thing. It does not involve sovereignty in the classic sense; it is a problem concerning municipal functions and the liability therefor. I see no reason why a court should not construe and apply the latter.[14]

■ A word must be said about the extent of the District's liability for the intentional torts of its police officers. Assault and battery and false arrest or imprisonment are common law torts for which the arresting officer, having no immunity, may be sued.[15] However, in such a suit, the officer may defend on the merits by proof that only reasonable force was used to maintain the arrest and that the arrest was made in good faith, with probable cause, under a statute he reasonably believed to be valid. Pierson v. Ray, 386 U. S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). And any defenses available to the individual police officer are also available to the District if it is party to a suit.

■ While in a suit for false arrest the defense of probable cause is often referred to in general terms, the court explained in Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc., *supra* at 1347–1348 of 456 F.2d, that:

> At common law the police officer always had available to him the defense of good faith and probable cause, and this has been consistently read as meaning good faith and "reasonable belief" in the validity of the arrest or search. . . . Similarly, the use of force is not privileged if in excess of that which the actor "reasonably believes to be necessary." [Citations omitted.]

\* \* \* \* \* \*

Therefore, to prevail the police officer need not allege and prove probable cause in the constitutional sense. The standard governing police conduct is composed of two elements, the first is subjective and the second is objective. Thus the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable. And so we hold that it is a defense to allege and prove good faith and reasonable belief in the validity of the arrest and search and in the necessity for carrying out the arrest and search in the way the arrest was made and the search was conducted. We think, as a matter of constitutional law and as a matter of common sense, a law enforcement officer is entitled to this protection.

---

14. Spencer v. General Hospital of District of Columbia, *supra* at 53, 425 F.2d at 484 (concurring opinion). Additionally, the majority opinion in *Spencer* states: "To the argument of appellee that we should await Congressional action, the answer is that the issue is not one of our *power* to act. As, *en banc*, we hereby provide a formal interment of the 'governmental-proprietary' test of immunity, we flout no visible purpose or policy of Congress but, rather, only bury one of our own offspring—one whom we periodically treated as illegitimate well in advance of *Elgin*. As to the *policy* of what we do, we see no virtue in staying our hand until Congress chooses to recognize formally that *we* have changed the direction of a course that *we* set long ago."

15. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Nesmith v. Alford, 318 F.2d 110 (5th Cir. 1963), cert. denied, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed. 2d 420 (1964); Cohen v. Norris, 300 F.2d 24 (9th Cir. 1962) (en banc); Craig v. Cox, note 5 *supra*; Sherbutte v. Marine City, *supra*.

The Fourth Circuit Court of Appeals, following *Bivens*, has also held that the probable cause standard for civil liability is a partially subjective one in contrast to the objective standard used in determining probable cause in a criminal proceeding. Hill v. Rowland, 474 F.2d 1374 (4th Cir. 1973). This point was not specifically covered in the *Carter* decision which did not analyze the term in relation to its meaning in civil litigation for false arrest or imprisonment.[16] In *Bivens*, however, the court felt that its understanding of the defense was the same as that held applicable to cases arising under Section 1983 by the Supreme Court in Pierson v. Ray, *supra,* a case relied upon in *Carter*. We agree with the analysis and holding of *Bivens* that when sued the individual police officer has a defense of good faith and reasonable belief in the validity of the arrest, a defense which in turn is available to the District of Columbia if a party to the suit.

 We hold that the District of Columbia may be sued under the common law doctrine of *respondeat superior* for the intentional torts of its employees acting within the scope of their employment. In so holding we subscribe to the sentiments of *Carter* that "[t]he policeman no longer stands in court alone and undefended." [17] Accordingly, the order of the trial court is

Reversed with instructions to reinstate the complaint.

---

16. The author of the Carter opinion states that "[w]ith respect to the question of ultimate liability, he believes that the substantive law of torts is sufficient to protect the officer from liability for conduct that is reasonable in the circumstances." *Supra* 144 U.S.App.D.C., at 394 n. 15, 447 F.2d at 364 n. 15.

17. Carter v. Carlson, *supra* at 404, 447 F.2d at 374 (concurring opinion). It is interesting to note that the ABA Urban Police Standards, reprinted BNA, 12 Crim.L.Rep. 3133, 3138, contains the following:

 PART V. CONTROL OVER POLICE AUTHORITY

 \* \* \* \* \*

5.5 Municipal tort liability.

In order to strengthen the effectiveness of the tort remedy for improper police

NEBEKER, Associate Judge, with whom REILLY, Chief Judge, and HARRIS, Associate Judge, join (dissenting):

Once again I am compelled to dissent from the holding of this court adopting a new rule of law respecting the sovereign liability of what in reality is the United States. For the sake of brevity, and since the present majority opinion is not substantially different from the vacated opinion, I incorporate my previous dissent in this case. *See* Graves v. District of Columbia, D.C.App., 287 A.2d 524, 525 (1972). I will, however, add the following comments.

This court has recently had occasion to reemphasize that the Constitution gives Congress power "[t]o exercise exclusive Legislation in all Cases *whatsoever*, over [the District of Columbia] . . . ." (Emphasis supplied.) [1] *See* District of Columbia v. Ray, D.C.App., 305 A.2d 531 (1973). This, I submit, is the constitutional rule of law to which this court and the circuit court must adhere. It is significant that the circuit court, while ignoring this constitutional provision, candidly recognized the legislative nature of its decision in Spencer v. General Hospital, 138 U.S. App.D.C. 48, 425 F.2d 479 (1969) (en banc). There the court stated:

Until the Congress addresses itself to a comprehensive effort to identify the

---

activities, governmental immunity, where it still exists, should be eliminated, and legislation should be enacted providing that the governmental subdivisions shall be fully liable for the actions of police officers who are acting within the scope of their employment. Neither tort liability nor costs attendant to the defense of a tort action should be imposed upon a police officer for wrongful conduct that has been ordered by a superior or is affirmatively authorized by police rules or regulations unless the conduct is a violation of the criminal law. Instead, liability and incidental costs and expenses in such cases should be borne by the governmental subdivision.

1. *See* U.S.Const. art. I, § 8, cl. 17.

foundations of liability more particularly, it will be for the courts here, as they are doing elsewhere, to make these discriminating judgments. . . . [*Id.* at 52–53, 425 F.2d at 483–484.]

In Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358 (1971) (reversed in part on a ground not directly presented here), the court was apparently also under the impression that it was free to legislate for the District. It stated:

Nevertheless, until the legislature provides a substitute scheme for compensating the victims of police torts, common law principles . . . guarantee to people like appellant at least a day in court. [*Id.* at 400, 447 F.2d at 370.]

Whatever may be said for legislative judgments by the judiciary, even of a discriminating nature made "elsewhere", the courts of the District of Columbia are circumscribed to a point of prohibition in this area of law.

I therefore believe that until Congress has clearly spoken on this matter, we are not free to pick and choose the provisions of the Federal Tort Claims Act we elect not to follow. The Act applies to the United States and until Congress speaks to the contrary, we should view the District and the United States as essentially the same sovereign and refrain from this admittedly legislative decision.

I note in passing that the circuit court's unexplained refusal in *Carter* to accept for intentional torts the congressional policy expressed in 28 U.S.C. § 2680 [2] is contrary to the expression of the full court in *Spencer*. To this extent *Carter* appears to have questionable validity since a division of that court could not properly overrule an earlier en banc decision. *Cf.* Davis v. Peerless Insurance Co., 103 U.S.App.D.C. 125, 255 F.2d 534 (1958).

Judicial disagreement and comment on this question continues. *See* Marusa v. District of Columbia, 484 F.2d 828 (D. C. Cir., Nos. 72–1027 and 72–1140, decided August 21, 1973). There the circuit court commented that my earlier dissent in this case "offers no policy considerations to support its position in favor of such immunity." *Id.,* at 832. Such an observation misses altogether the thrust of my point that it is not for the courts to seek out and evaluate "policy considerations" for immunity in this type of case, and then rely upon a failure to find them as justification for a new rule of law. What the circuit court has done, and what this court now does, is to create sovereign liability where it is thought desirable simply because those making the judicial decisions presume to know what is the better rule and cannot understand why Congress, which is charged with the legislative responsibility, has not seen things their way.

The trial judge, in my mind, did not err in dismissing the complaint on the authority of *Spencer*. The subsequent, nonbinding decision in *Carter* is far too fragile a reed on which to rest the majority holding. I would affirm.

2. *See* Graves v. District of Columbia, *supra* at 525 of 287 A.2d (Nebeker, J., dissenting).