[Civ. No. 4859.   Fourth Dist.   Aug. 18, 1954.]

CHARLES DAVID BURNETT, Appellant, v. CITY OF SAN DIEGO et al., Respondents.

Herbert C. Meade and Martin & Mahedy for Appellant.

Jean F. DuPaul, City Attorney, and John W. McInnis for respondent City of San Diego.

Gray, Cary, Ames & Frye for respondent Fine Arts Society of San Diego.

BARNARD, P. J.—This is an action for damages arising from a fall on an outdoor stairway. The complaint alleged that the buildings and premises involved were owned by the defendant city; that they were jointly controlled and maintained by said city and the defendant Fine Arts Society; that the defendants, and each of them, were remiss in their operation and maintenance of the premises in that it was well known, or should have been known, to the officers and agents of each that this stairway was wet and littered with leaves and debris, and that the area was unilluminated, making it dangerous for invitees and the public to use the stairway after nightfall; that the defendants and their agents failed to remedy these conditions, to warn the plaintiff of said hazards, or to take action reasonably necessary to protect the public against said hazardous conditions; and that the plaintiff was injured as the result of the defendants' negligence in controlling and maintaining the premises.

The accident occurred on the premises of the Fine Arts Gallery in Balboa Park, which was built by private persons on land owned by the city and turned over to the city as a gift. The gallery was being used by the Fine Arts Society, for educational and cultural purposes, under an informal agreement with the city. Under this arrangement the city budgeted a certain amount for the operations of the society, and the society's director and curator and all of the maintenance men and guards, with one exception, were listed as

employees of the city and paid by the city. The one exception was a guard named Bush, who was employed and paid by the Fine Arts Society.

A class in ceramics was conducted one evening a week in a classroom "in back of the building at the basement level," which was reached by an outdoor stairway. Near the bottom of this stairway there was a door to this classroom, and another door leading to the basement of the gallery proper which was kept locked. There were two lights, one at the top of this stairway and one at the bottom, which could be turned on only by a switch located inside the basement of the gallery. The teacher for this class was furnished as a part of its adult education program by the San Diego Unified School System, and the class was held in this room under permission given by the Director of the Fine Arts Society.

The accident happened about 7 p. m. on January 17, 1952, as the plaintiff was on his way to this classroom. He had been invited by the teacher to demonstrate the use of a potter's wheel to the class, with the privilege of following his demonstration with private instruction to such of the students as desired to remain and pay for that service. The class took up at 7 p. m., but the plaintiff was told to come sometime between 7 and 7:30 p. m. He had attended this class for this purpose on several prior occasions, one of them being the preceding week. It was a rainy night and these steps were wet. Although this stairway had been swept that afternoon there was a certain amount of leaves and pods on the stairway which had come from nearby eucalyptus and other trees, which was the usual thing especially in the winter. The plaintiff testified that he arrived about 7 p. m.; that as he went along the path toward the rear of the building it was wet and slippery, but he went slowly and had no trouble; that when he came to the head of the stairway he observed that the stairway lights were not lighted; that it was so dark that he could not see anything distinctly at the basement level; that he could tell that there was a light in the classroom but the shades were drawn and it did not illuminate "the area down there"; that it was not as dark at the top of the stairway as it was at the bottom; that he proceeded down the stairs grasping the rail with his left hand and carrying his tools in his right hand; that he did not hurry down but waited until one foot was on a step before he moved the other foot; that when he put his foot on the tread of the last step, the one above the basement floor, he stepped on

"something slippery" and his feet went out from under him, causing his fall; that he did not see the thing which caused him to slip, but it was an object with some body to it as he could feel it through his shoe; that he felt the object when he first put his foot down; and that he had placed the full weight of his body upon it when he fell.

The plaintiff was the first one to arrive for the class, with the exception of the teacher. A member of the class, who arrived shortly before 7 p. m. and who came down the stairway immediately behind the plaintiff, testified that she could not see when she was near the bottom of the steps but she heard the plaintiff say that he had fallen and was hurt; that at that time there were eucalyptus leaves and pods underfoot on the stairway; "that you have to be careful not to slip on them"; and that every time you went out there you were aware of their presence. The plaintiff's son, who arrived a few minutes later, testified that the outside lights were then on and he examined the stairs; that he saw leaves and small twigs from the surrounding shrubs and trees distributed generally up and down the stairway; that these leaves were scattered unevenly over the last step where his father said he had slipped, and about half of that step was so covered; and that he saw nothing on the step other than leaves and debris from the trees. Another witness, a friend of the son, testified that he examined the step upon which the accident occurred; that he saw leaves and small twigs thereon; and that he saw nothing else except that the step was wet. The teacher of the class testified that she went down to the classroom about dusk, at which time the lights were not on; that she saw nothing on the steps that she noticed; that after the accident she went up the steps and around the building to use the phone to call the plaintiff's son, and also to report the accident; that she then went back the way she had come and when she arrived at the stairway the lights were on; that on prior occasions when the class met the lights were normally on; and that if it was dark when she arrived, or if she first went into the gallery as she sometimes did, she would ask about the lights.

Bush, a guard employed by the Fine Arts Society, testified that usually he was the only person on the premises after 5 p. m. until a night watchman came at 9 p. m.; that he was instructed as to his duties by the director of the gallery; that he had standing orders to turn on these lights on nights when this class was meeting; that the director, before leaving

that day, told him to remember that the class was meeting that night; that he did not turn on the lights "Because that particular night there were so many obligations that I wanted to fulfill that I really forgotten them"; that usually the teacher of the class came to the front door, told him that the class was to meet, and asked him to go and turn on the lights, which he would do; and that on this occasion she came in and asked permission to use the phone but did not ask him to turn on the lights. There was also evidence that the door into the gallery basement was kept locked and the key was retained by the guard, that members of this class were not permitted to go through the basement, and that this stairway was the only mode of access available to persons desiring to attend this class.

At the conclusion of plaintiff's case each of the defendants moved for a nonsuit, and both motions were granted. The plaintiff has appealed from the judgment which followed.

Appellant's main contention is that the court erred in granting the motions for a nonsuit; that he was an invitee upon premises owned by the city and operated in part by the city and in part by the Fine Arts Society; that the respondents and each of them owed him a duty with respect to the proper maintenance and operation of the premises; that the constant dropping of leaves and debris from nearby trees constituted a continuing maintenance problem which was known to the respondents and which was accentuated during the rainy season; that the evidence justifies the inference that he stepped upon a leaf or pod or other piece of debris from a tree, and the further inference that he would not have stepped upon the offending object if he had been able to see where he was going; that it could reasonably be inferred that the accident would not have happened if the lights had been lighted, or if the last step had been free from "arboreal debris"; that a prima facie showing was made which was sufficient to require a submission of the case to the jury; and that any question of contributory negligence was one of fact rather than one of law.

With respect to the respondent city, it clearly appears that as to anything in this connection it was engaged in a governmental function and was not acting in a proprietary capacity. In the absence of a statute authorizing liability a city is not liable for the negligent acts of its officers and employees in discharging duties pertaining to governmental functions (*Brindamour* v. *Murray*, 7 Cal.2d 73 [59 P.2d 1009]). The

appellant contends that the absence of light and the presence of arboreal debris were concurring causes of his fall, and that in the absence of either circumstances an accident would be unlikely. No officer or agent of the city had anything to do with the failure to turn on the lights.

The appellant charged in his complaint that he suffered this injury as a result of a dangerous condition on this stairway which was known to the respondents and which they failed to remedy, and that he was injured as a result of the negligence of respondents in maintaining the premises. The city was liable, if at all, under the provisions of what is commonly known as the Public Liability Act, now found in Government Code, section 53050 et seq. Section 53051 provides for liability for injuries resulting from the dangerous or defective condition of public property if the proper body or board had knowledge or notice of the defective or dangerous condition, and failed to remedy the same, or to take action reasonably necessary to protect the public, within a reasonable time after acquiring such knowledge or notice.

No complaint is here made that this stairway was not properly constructed. A handrail was provided and adequate lighting fixtures were installed. It is claimed that the city failed to properly maintain this portion of its public property by permitting arboreal litter to remain on the steps at a time when the appellant was invited to use them. The construction and continued use of an outside stairway, upon which leaves and tree droppings will naturally fall, standing alone, cannot be held sufficient to impose liability upon a city under the provisions of the Public Liability Act. With respect to the matter of maintenance the undisputed evidence is that these steps were swept daily and had been swept that afternoon. Under the statute, a city could not reasonably be required to keep a man there at all times when the stairway might be used, to sweep up each leaf as it fell. If a dangerous condition in fact existed at this time there is an entire absence of any evidence that the city had knowledge or notice of such fact, or that it had had a reasonable time within which to remedy the condition or take steps to protect the public. The only negligent act which was properly chargeable to either of the respondents was that of Mr. Bush, in failing to turn on the lights. He was an employee of the Fine Arts Society and the city had no advance knowledge of his failure to carry out his instructions. The evidence was not sufficient to establish liability on the part of the city, and its motion for a non-

suit was properly granted (*Cheyney* v. *City of Los Angeles*, 119 Cal.App.2d 75 [258 P.2d 1099]; *Barrett* v. *City of Claremont*, 41 Cal.2d 70 [256 P.2d 977]).

The evidence discloses a different situation with respect to the Fine Arts Society. That respondent argues that it had nothing to do with the maintenance of the stairway, which was the responsibility of the city; that the guard who should have turned on the lights, although paid by the society, had been given his instructions by the director and curator of the gallery, who were employees of the city; that the failure to turn on the lights could not constitute negligence since no hidden danger existed; that the condition existing was obvious to the appellant; that there was no evidence which justifies the inference that the lack of light was the proximate cause of the accident; that the appellant was guilty of contributory negligence in going down these stairs when he could not see; and that the appellant was not an invitee of the Fine Arts Society since he went there on the invitation of the teacher of the class, who was employed by the school district.

While the Fine Arts Society had nothing to do with the maintenance of the stairway, as such, its employee failed to turn on the lights which were needed in carrying on an activity which was in line with the general activities of the society and which was being carried on upon these premises under permission given by the director of the society. While the director and curator, who gave Mr. Bush his instructions, were listed as city employees and paid by the city they were also the principal managing officers of the society. It cannot be said, as a matter of law, that the society owed no duty to the appellant with respect to the lights on this stairway. Most of the questions which appear in this connection were questions of fact and not of law, and should have been submitted to the jury. While the evidence would have justified a finding that the appellant was guilty of contributory negligence that question was one of fact, and the evidence is not sufficient to disclose such negligence as a matter of law. Whether or not he exercised reasonable care, under all of the circumstances shown, was a question of fact.

It is further contended that the court erred in rejecting certain offers of proof with respect to other accidents on this stairway. These offers of proof were insufficient in the form in which they were made, and were properly rejected. They

require no further consideration here as they do not affect the result on this appeal.

The judgment is affirmed as to the defendant city, and is reversed as to the defendant Fine Arts Society of San Diego.

Mussell, J., concurred.

A petition by respondent Fine Arts Society of San Diego for a rehearing was denied September 15, 1954, and its petition for a hearing by the Supreme Court was denied October 13, 1954.