Filed 11/4/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| LORENZA MAKSIMOW, | C098705 |
| Plaintiff and Appellant, | (Super. Ct. No. SC20210070) |
| v. | |
| CITY OF SOUTH LAKE TAHOE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of El Dorado County, Leanne K. Mayberry, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Bickford, Blado & Botros and Andrew J. Botros for Plaintiff and Appellant.

Heather L. Stroud, City Attorney, and Daniel J. Bardzell, Assistant City Attorney, for Defendant and Respondent.

Plaintiff Lorenza Maksimow slipped and fell on a patch of ice in a public parking lot in the City of South Lake Tahoe (City).  Maksimow sued, alleging the ice patch was a dangerous condition of public property within the meaning of Government Code sections

830 and 835.[1]  The City moved for summary judgment.  The trial court granted the motion and entered judgment in the City's favor.  Maksimow appeals, arguing there are triable issues of material fact regarding the City's actual or constructive notice of the alleged dangerous condition.  We disagree and affirm the judgment.

## I.  BACKGROUND

Maksimow spent several days in South Lake Tahoe in March 2020.  She went to retrieve her car from a public parking lot around 7:30 on the morning of March 26, 2020.  It was cold that day, with temperatures ranging from 12 to 30 degrees Fahrenheit.

Maksimow walked towards her car and spoke with an acquaintance.  She was looking at her car and saw nothing on the ground before falling.  It was then that Maksimow first saw an ice patch covering an area of approximately three feet by four feet.  The ice patch was located near a white Mitsubishi sedan (the Mitsubishi), which was parked in the same lot.  Maksimow was taken to the hospital, where she underwent surgery on her injured ankle.

### A.  Maksimow's First Amended Complaint

Maksimow sued the City.  Her first amended complaint, which is the operative pleading, alleges the ice patch constituted a dangerous condition and asserts a single cause of action for maintaining a dangerous condition of public property.  (§ 835.)  The first amended complaint seeks compensatory damages for wage loss, hospital and medical expenses, and pain and suffering.

### B.  The City's Motion for Summary Judgment

The City moved for summary judgment, arguing Maksimow could not establish the existence of a dangerous condition, or actual or constructive knowledge of any such condition.  The City's motion was supported by evidence the City had received no

---

[1] Undesignated statutory references are to the Government Code.

2

liability claims concerning dangerous conditions in the parking lot, including from snow or ice, from January 1, 2017, through March 26, 2020. The City also showed there had been no complaints or service requests for snow or ice removal from the parking lot for the 12 months preceding Maksimow's fall. Maksimow herself had not previously complained about snow or ice in the parking lot, and the City first became aware of the ice patch when she filed her liability claim with the city clerk's office.

The City offered the declaration of Sonia Wheeler, a community service officer supervisor. Wheeler averred she reviewed various electronic records and determined that the Mitsubishi had been identified for investigation as part of the City's abandoned vehicle abatement program. A community service officer had taken photographs of the Mitsubishi on March 12, 2020, two weeks before Maksimow's accident. The photographs, which were attached as an exhibit to the Wheeler declaration, show the Mitsubishi from various angles, mostly at close range. There does not appear to be any ice or snow on the ground, and the pavement surrounding the Mitsubishi appears smooth and dry. The Wheeler declaration avers the community service officer would have asked that the Mitsubishi be towed immediately had he or she determined the car posed a safety threat.

The City offered a second set of photographs, which were said to have been taken by Maksimow and attached to her liability claim form. The photographs show the Mitsubishi and parking lot some two to four weeks after the accident. Mounds of what appears to be old and partially melted snow can be seen on the unpaved area surrounding the parking lot, and a small strip of snow can be seen on the passenger side of the Mitsubishi. Some of the photographs are marked with an "X" to show the approximate location of Maksimow's fall. No ice or snow can be seen in the immediate vicinity of the "X."

The City also presented evidence concerning its standards for snow and ice removal. James Steed, maintenance manager for the parks and recreation department,

3

explained that the City's snow and ice removal plan establishes different priority levels for snow clearing, with parking lots assigned the same priority as residential streets, bicycle trails, and sidewalks.[2] Snow removal operations are triggered when snow accumulations reach three inches or more.

According to the Steed declaration, weather data from the National Oceanic and Atmospheric Administration show total snowfall for the 15-day period from March 12 through March 26, 2020, was less than three inches.[3] "Based on those snowfall amounts," the Steed declaration avers, "the Parks maintenance staff would not have performed snow removal operations in the parking lot . . . between March 12, 2020[,] and March 26, 2020." The Steed declaration further avers the snow and ice removal plan does not typically call for the use of traction abrasives, such as sand and salt, in parking lots, as they have been found to contribute to urban runoff, which impacts the clarity of Lake Tahoe.

## C. Maksimow's Opposition

Maksimow opposed the City's motion. She presented evidence that the City issued a parking citation for the Mitsubishi on March 15, 2020. The parking citation indicates the Mitsubishi was parked in violation of South Lake Tahoe City Code section 7.05.420, which prohibits the obstruction of snow removal equipment.[4] The parking

---

[2] The parks and recreation department is responsible for maintaining the parking lot.

[3] As we shall see, the trial court did not credit this evidence.

[4] South Lake Tahoe City Code section 7.05.420 provides in pertinent part: "It shall be unlawful for any person to park, abandon, or otherwise leave unattended any vehicle or trailer, as defined in Section 670 of the California Vehicle Code, on any city right-of-way at any time or in any manner which will obstruct or hinder any city employee or city contractor during the snow season or which will leave any vehicle in such a position that it is subject to damage by city employees or city contractors engaged in snow removal operations."

citation also indicates that photographs were taken at the time of issuance. Those photographs, which are said to have been produced by the City, show the parking lot and Mitsubishi covered in what appears to be several inches of fresh snow. The photographs are date stamped March 15, 2020.

Maksimow presented evidence the Mitsubishi was towed from the parking lot on April 21, 2020, after her fall and the date set by the notice of abatement. She also presented climatological data from the National Weather Service. That data showed—or purported to show—that the area received six and one-half inches of snowfall on March 25, 2020.[5]

Maksimow's opposition was supported by an expert declaration from certified snow professional Jeremy Swenson. Relying on the previously described data from the National Weather Service, Swenson averred there was six and one-half inches of snowfall on March 26, 2020. Swenson further averred he had reviewed the City's snow and ice removal policy and the deposition testimony of various City employees, including maintenance manager Steed and former maintenance worker Steve Domingo (now retired), and believed they were aware of slip-and-fall risks posed by snow and ice in the parking lot but nevertheless failed to comply with the City's snow and ice removal plan. Swenson further opined the City should have towed the Mitsubishi sooner, as the abandoned car would have interfered with attempts to remove snow and ice from the parking lot with a plow or snow loader, and should have chipped the ice in the parking lot, or used salt or sand to deice it.

D.      *The City's Objections*

The City raised numerous objections to Maksimow's evidence. As relevant here, the City objected to the data from the National Weather Service as irrelevant inasmuch as

---

[5] As we shall see, the trial court did not credit this evidence either.

the data reflected conditions in Tahoe City, rather than South Lake Tahoe.[6]  The City also objected to various assertions in the Swenson declaration, including that the City received six and one-half inches of snow on March 25, 2020 (which was based on the irrelevant National Weather Service data), and the City violated the snow and ice removal plan by failing to remove snow and ice from the parking lot between March 15, 2020, and March 26, 2020.

E.      *The Trial Court's Ruling*

The trial court heard argument on the City's motion.  Following argument, the trial court granted summary judgment, finding the City had shown that an element of Maksimow's cause of action could not be established.  Specifically, the trial court found Maksimow failed to raise a genuine issue of material fact as to whether the City had actual or constructive knowledge of the alleged dangerous condition.

The trial court sustained the City's objections to the National Weather Service data and the previously described assertions in the Swenson declaration.  The trial court also refused to consider the weather data from the National Oceanic and Atmospheric Administration.  As previously discussed, the City offered the data to show total snowfall for the 15-day period from March 12 through March 26, 2020, was less than three inches, such that the snow and ice removal plan would not have been activated.  However, the trial court found the data from the National Oceanic and Atmospheric Administration failed to distinguish between types of precipitation (e.g., water or snow), and thus failed to establish that less than three inches of snow fell between March 12 and March 26, 2020.  Thus, there was no data-based evidence as to snow accumulation in South Lake

---

[6] We take judicial notice on our own motion that the distance from Tahoe City to South Lake Tahoe is approximately 30 miles.  (Evid. Code, § 452, subd. (h); *People v. Posey* (2004) 32 Cal.4th 193, 215, fn. 9.)

6

Tahoe during the relevant period.  Neither party challenges any of these evidentiary rulings.

The trial court also found Maksimow mischaracterized the evidence concerning the City's snow removal efforts.  Specifically, Maksimow asserted the City conducted no snow removal operations between March 12 and March 26, 2020.  However, the trial court observed that no evidence established as much.  Rather, the evidence showed the snow and ice removal plan goes into effect when the City receives snowfall of three inches or more, and the City believed less than three inches fell during the relevant period.

The trial court entered judgment in the City's favor on April 12, 2023.  This appeal timely followed.

## II.  DISCUSSION

Maksimow argues the evidence created triable issues of material fact that precluded granting the City's motion for summary judgment.  She does not challenge any of the trial court's evidentiary rulings.  As we explain, we find no triable issue of material fact and conclude summary judgment was properly granted.

### A.    *Standard of Review*

Summary judgment is appropriate when all the papers submitted show there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense.  (Code Civ. Proc., § 437c,

7

subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 853; *Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179-1180.) This may be done by affirmatively proving that a specified fact does not exist or by showing that the plaintiff has no evidence to prove that fact. (*Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 756.)

Once the moving defendant has met its initial burden, the burden shifts to the nonmoving plaintiff to show that a triable issue of material fact exists. (*Aguilar, supra,* 25 Cal.4th at p. 850.) "To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings." (*Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1264.) " ' "[A] party cannot successfully resist summary judgment on a theory not pleaded." ' " (*Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1125.) A triable issue of material fact exists if, and only if, the evidence reasonably permits the trier of fact to find the contested fact in favor of the plaintiff in accordance with the applicable standard of proof. (*Aguilar, supra,* at p. 850.)

We review an order granting summary judgment de novo, applying the same three-step analysis as the trial court. (*Aguilar, supra,* 25 Cal.4th at p. 860; *Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 503.) First, we identify the issues framed by the pleadings, as those are the allegations to which the motion must respond. (*Hamburg, supra,* at p. 503.) We next determine whether the defendant's showing establishes facts which negate the plaintiff's claims and justify a judgment in the defendant's favor. (*Ibid.*) If the defendant has made such a showing, we then determine whether the plaintiff has demonstrated the existence of a triable, material issue of fact. (*Ibid.*)

We view the evidence in a light favorable to the party opposing summary judgment or adjudication, liberally construing that party's evidence while strictly scrutinizing the moving party's showing and resolving all doubts concerning the evidence in favor of the opposing party. (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500.) We consider all of the evidence offered in connection with the motion

8

except that which the trial court properly excluded. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717; *Gin v. Pennsylvania Life Ins. Co.* (2005) 134 Cal.App.4th 939, 946.) The trial court's stated reasons for granting summary judgment are not binding on us, because we review the court's ruling, not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22 [" 'the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court' "].)

B.     *Government Claims Act*

The City's potential liability in this case is governed by section 835, which provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

A "dangerous condition" is defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) Maksimow argues she raised triable issues of material fact as to the existence of "two dangerous conditions" in the parking lot: the ice patch and the Mitsubishi. She acknowledges there was "nothing inherently dangerous" about the Mitsubishi. However, she argues the abandoned car interfered with the City's snow removal operations and amplified the hazards posed by

9

snow and ice, such that the snow-covered Mitsubishi became another, independent dangerous condition. For purposes of appeal, we assume there are triable issues of fact as to whether the combination of ice patch and abandoned car constitute one or more dangerous conditions. Having done so, we can proceed directly to the question of notice.

## C.     Actual or Constructive Notice

Maksimow acknowledges the City met its initial burden on summary judgment, but argues she demonstrated the existence of triable issues of material fact regarding actual and constructive notice. She relies on evidence the City received substantial snowfall between March 12 and March 15, 2020, and cited the Mitsubishi for interfering with snow removal operations. We conclude Maksimow has failed to carry her burden.

### 1.     Actual Notice

We begin with actual notice. "A public entity has 'actual notice of a dangerous condition' if it has (1) 'actual knowledge of the existence of the condition' and (2) 'knew or should have known of its dangerous character.' " (*Martinez v. City of Beverly Hills* (2021) 71 Cal.App.5th 508, 519, quoting § 835.2, subd. (a).) To establish actual notice, there must be "some evidence" the public entity's employees "had knowledge of the particular dangerous condition in question." (*State of California v. Superior Court (Rodenhuis)* (1968) 263 Cal.App.2d 396, 399 (*Rodenhuis*).) It is not enough to show they had " 'a general knowledge' that the condition can sometimes occur." (*Martinez, supra,* at p. 519, quoting *Rodenhuis*.)

Maksimow argues the City had actual notice of substantial snowfall and the Mitsubishi. She points to photographs taken by community service and parking enforcement officers on March 12 and March 15, 2020, and argues a reasonable jury could infer the City received more than three inches of snow in that time frame, and the City had actual notice of that fact. We do not disagree. However, it is one thing to say City employees had actual notice of snowfall on March 15, 2020, and another thing to say they had actual notice of the dangerous condition that caused Maksimow's fall on

10

March 26, 2020.  That City employees may have known about snow falling on one given day does not establish they knew about an ice patch that existed 11 days later.  Likewise, that City employees may have anticipated the Mitsubishi would interfere with snow removal operations does not establish they knew an ice patch would form near the abandoned car.  At best, Maksimow's evidence shows that City employees were aware of circumstances that could conspire to create an ice patch at some indeterminate time.  That is not enough.

Rodenhuis is instructive.  In Rodenhuis, a toddler suffered severe burns after sitting on the remains of a fire on a state beach.  (Rodenhuis, supra, 263 Cal.App.2d at p. 398.)  State employees knew beachgoers sometimes buried coals in the sand.  (Ibid.)  They also knew sand-covered coals could stay hot for days and pose a hazard to people walking along the beach.  (Ibid.)  Indeed, several people had been burned by hot coals.  (Ibid.)  This too was known to state employees.  (Ibid.)  That evidence notwithstanding, the court found no triable issue as to actual notice.  (Id. at pp. 399-400.)  The court explained:  "To establish 'actual notice,' it is not enough to show that the state employees had a general knowledge that people do leave hot coals on public beaches.  There must be some evidence that the employees had knowledge of the particular dangerous condition in question."  (Id. at p. 399.)

Here, though City employees may have had a "general knowledge" that snow sometimes turns to ice, which may be hazardous to pedestrians, and abandoned cars may interfere with snow removal operations, nothing suggests they had actual notice of the "particular dangerous condition [or conditions] in question"; namely, the ice patch near the Mitsubishi that caused Maksimow's injuries.  The trial court correctly found no triable issue as to actual notice.  That brings us to constructive notice.

   2.    Constructive Notice

Maksimow concentrates most of her attention on the issue of constructive notice.  She argues there are triable issues as to whether the allegedly dangerous conditions—the

11

ice patch and Mitsubishi—existed for a sufficient length of time before her fall to permit the City to discover and remedy them. She relies on much of the same evidence as before; specifically, the photographs taken by community service and parking enforcement officers on March 12 and March 15, 2020, and the parking citation issued to the owner of the Mitsubishi on March 15, 2020. She also relies on evidence the average temperature in South Lake Tahoe was below freezing from March 15 through March 26, 2020. This evidence fails to raise a triable issue of material fact regarding constructive notice.

To establish constructive notice under section 835.2, subdivision (b), a plaintiff must show the dangerous condition "existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." Put another way, "[a] claim for constructive notice has two threshold elements. [Citation.] A plaintiff must establish that the dangerous condition has existed for a sufficient period of time and that the dangerous condition was obvious." (*Heskel v. City of San Diego* (2014) 227 Cal.App.4th 313, 320.) "Where the plaintiff fails to present direct or circumstantial evidence as to either element, his claim is deficient as a matter of law." (*Id.* at p. 317.)

Maksimow relies on the photographs and parking citation to argue the allegedly dangerous conditions "existed for such a period of time" that the City, in the exercise of due care, should have discovered them and their dangerous character. (See § 835.2, subd. (b).) As before, she argues the photographs and parking citation support an inference the City received some substantial amount of snow between March 12 and March 15, 2020, and City employees had notice of both the snowfall and Mitsubishi by the second of these dates. Again, we do not disagree. But the slip and fall occurred 11 days later, on March 26, 2020. Does evidence of the City's constructive notice on March 15, 2020, raise a triable issue as to the City's constructive notice on March 26, 2020? In the circumstances of this case, we think it does not.

12

Maksimow assumes, not unreasonably, that constructive notice requires evidence the dangerous condition existed before the accident. That seems true enough. (*Briggs v. State of California* (1971) 14 Cal.App.3d 489, 495 ["Constructive notice may be imputed if it can be shown that an obvious danger existed for a sufficient period of time before the accident to have permitted state employees, in the exercise of due care, to discover and remedy the situation"]; see also *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 303.) And here, as we have said, Maksimow presented evidence that snow and the Mitsubishi were present in the parking lot by March 15, 2020. But there was no evidence that ice was in the parking lot on March 15, 2020. And even accepting that snow and ice often go together, both are transitory phenomena, perhaps uniquely so. That snow or ice may have been present in the parking lot on March 15, 2020, does not necessarily mean that either was present on March 26, 2020.

Maksimow argues there was evidence from which a reasonable jury could infer that snow that accumulated in the parking lot between March 12 and March 15, 2020, turned to ice at some point, and remained in the parking lot through March 26, 2020. She points to the City's proffer of data from the National Oceanic and Atmospheric Administration, which shows the average daily temperature was below freezing from March 15 and March 26, 2020. That evidence, she says, "allows an inference that there was no snow that melted into water or vice versa during this time period." We disagree.

On our own motion, we take judicial notice of the freezing point of water (or melting point of ice), which is ordinarily 32 degrees. (Evid. Code, § 452, subd. (h); see also *People v. Gilyard* (1933) 134 Cal.App.184, 188-189 [taking judicial notice that water in a tea kettle, which was 212 degrees at 9:00 p.m., in late December, would be lower than 110 degrees at 6:30 a.m. the next morning, even in Southern California].) In looking over the National Oceanic and Atmospheric Administration data, we note temperatures fluctuated above and below the freezing point on all but one of the 11 days preceding Maksimow's fall. For example, high temperatures were 41 degrees on March 20, 2020,

13

and 46 degrees on March 21 and March 22, 2020, while low temperatures were 7, 13, and 14 degrees on those days.  On each of these days, average temperatures may have been below the freezing point, but high temperatures were well above it, sometimes by as much as 14 degrees.  And herein lies the problem with Maksimow's opposition argument: average temperatures do not tell us how long temperatures were above or below the freezing point, or the rates at which snow or ice might have been expected to melt or refreeze.  They only provide a snapshot of conditions on those days.  Average daily temperatures do not provide grounds for extrapolating the presence of snow or ice over an extended period in which temperatures fluctuated above and below the freezing point.  At least, not so far as the record reveals.  And no other evidence was offered to support the idea that snow in the parking lot on March 15, 2020, would have turned to ice and continued to exist as the same ice patch through March 26, 2020.  Thus, a jury would have no way of knowing, other than guessing, whether accumulated snow and ice in the parking lot "existed for such a period of time" that the City, in the exercise of due care, could have discovered them and their dangerous character.  (§ 835.2, subd. (b).)

     *Rodenhuis* is again instructive.  As previously discussed, the court there found the plaintiff failed to present evidence that state employees had actual notice of hot coals on the beach.  (*Rodenhuis, supra,* 263 Cal.App.2d at p. 400.)  With respect to constructive notice, the court explained:  "Briefly stated, constructive notice may be imputed if it can be shown that an *obvious* danger existed for an adequate period of time before the accident to have permitted the state employees, in the exercise of due care to discover and remedy the situation had they been operating under a reasonable plan of inspection." (*Ibid.*)  "In the instant case," the court continued, "it can be validly argued that there was a triable issue on the question of inspection, but in determining whether there is constructive notice, the method of inspection has been held to be secondary.  The primary and indispensable element of constructive notice is a showing that the *obvious condition existed a sufficient period of time before the accident.*"  (*Ibid.*)  "Here," the court

14

concluded, "there was no evidence (direct or circumstantial) that the danger was obvious nor that the situation had existed for any particular length of time before the accident." (*Ibid.*) Thus, the court found as a matter of law that the plaintiff failed to raise a triable issue as to constructive notice. (*Ibid.*)

*Rodenhuis* relied on *Kotronakis v. City & County of San Francisco* (1961) 192 Cal.App.2d 624 (*Kotronakis*), which the court described as "on all fours." (*Rodenhuis, supra,* 263 Cal.App.2d at p. 400, citing *Kotronakis*.) In *Kotronakis,* the plaintiff slipped and fell in a puddle of vomit on the sidewalk in an area known as " 'skid road.' " (*Kotronakis, supra,* at p. 629.) The evidence showed vomit was a frequent occurrence on sidewalks in the area. (*Ibid.*) However, there was "a total lack of evidence that the particular vomit on which [the plaintiff] slipped had been there longer than overnight." (*Ibid.*)

The *Kotronakis* court refused to impute constructive notice of the dangerous condition to the city. (*Kotronakis, supra,* 192 Cal.App.2d at p. 630.) The court explained: "We think it would be carrying the doctrine of constructive notice too far to attribute to the city notice of the presence of the vomit on which plaintiff slipped. As a practical matter, if we were to do so, the city would have to have inspectors circulating throughout the area, day and night, and particularly on Sunday nights, to discover and remove such material from the sidewalks. In our opinion, to state this proposition is to refute it." (*Ibid.*)

A similar conclusion was reached in *Burnett v. City of San Diego* (1954) 127 Cal.App.2d 191 (*Burnett*), in which the plaintiff slipped and fell on eucalyptus leaves on an outdoor stairway. (*Id.* at pp. 192-193.) The stairway had been swept earlier that day, but additional eucalyptus leaves and pods soon accumulated, "which was the usual thing especially in the winter." (*Id.* at p. 193.) It was also wet and dark. (*Ibid.*) Nevertheless, the court concluded the city "could not reasonably be required to keep a man there at all times when the stairway might be used, to sweep up each leaf as it fell. If a dangerous

15

condition in fact existed at this time there is an entire absence of any evidence that the city had knowledge or notice of such fact, or that it had had a reasonable time within which to remedy the condition or take steps to protect the public." (*Id.* at p. 196.)

Here, as in the cases just discussed, we are concerned with transitory conditions of public property.[7] (See *Rodenhuis, supra,* 263 Cal.App.2d at p. 398; *Kotronakis, supra,* 192 Cal.App.2d at p. 629; and *Burnett, supra,* 127 Cal.App.2d at pp. 192-193.) Like hot coals (*Rodenhuis*), vomit (*Kotronakis*), or falling leaves (*Burnett*), the ice patch could have been present in the parking lot for 11 days or 11 hours. Likewise, though the Mitsubishi may have been present long enough to interfere with snow removal efforts, the car was only dangerous to the extent there was snow or ice nearby. And here again, the evidence supports only a speculative inference that this was the case. As we have suggested, a jury would be left to guess whether the dangerous conditions were present for "such a period of time" that the City could have discovered them in the exercise of due care. (§ 835.2, subd. (b).) Such an invitation to guesswork falls short of raising a triable issue of material fact. (*Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1453 ["A triable issue of fact can only be created by a conflict of evidence, not speculation or

---

[7] *Rhodes v. City of Palo Alto* (1950) 100 Cal.App.2d 336 (*Rhodes*), on which Maksimow relies, is distinguishable. There, the plaintiff tripped on a "chuckhole" in a parking lot. (*Id.* at p. 337.) The chuckhole was described as "an old hole," some 12 to 18 inches across, which "appeared to have been gradually worn in the pavement." (*Id.* at p. 343.) At the same time, there was evidence that chuckholes can develop following rains, and there had been a heavy rainstorm two weeks before the plaintiff's accident. (*Ibid.*) There was also evidence that the city engineer believed the chuckhole "developed in a rain and very rapidly." (*Ibid.*)

Maksimow emphasizes factual similarities between *Rhodes* and the present case, noting both involve parking lots and dangerous conditions created by precipitation. But the chuckhole in *Rhodes* differs from the ice patch here in that, once started, whether by rain or otherwise, it appears likely to have persisted. Unlike an ice patch, a chuckhole would not be transitory or ephemeral, but would likely endure for some period of time. Thus, despite superficial similarities to our case, *Rhodes* appears to us to be distinguishable.

16

conjecture"]; see also *Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161 [summary judgment opposition based on inferences "must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork"].)[8]

We conclude Maksimow failed to raise a triable issue as to whether the allegedly dangerous conditions were present in the parking lot long enough for the City to discover and remedy them. Having so concluded, we find it unnecessary to consider whether the conditions were obvious. It is also unnecessary to address Maksimow's argument that the trial court erred in finding she "mischaracterized" the evidence as to whether the City followed the snow and ice removal plan. (See *Rodenhuis, supra,* 263 Cal.App.2d at p. 400 ["The primary and indispensable element of constructive notice is a showing that the *obvious condition existed a sufficient period of time before the accident*"]; see also *Strongman v. County of Kern* (1967) 255 Cal.App.2d 308, 313 ["in determining constructive notice, the method of inspection is secondary, the primary and indispensable element of constructive notice is a showing that the condition existed before the accident"].) Summary judgment was properly granted.

---

[8] *Straughter v. State of California* (1976) 89 Cal.App.3d 102 provides a useful contrast. There, the plaintiff was injured in a multi-car collision caused by ice on the highway near the Altamont Pass. (*Id.* at p. 104.) After a jury verdict in favor of the plaintiff, the state appealed and challenged the sufficiency of the plaintiff's evidence of constructive notice. The Court of Appeal affirmed the judgment in favor of the plaintiff, pointing to expert testimony regarding the gradual formation of ice on the highway and its existence prior to the accident, which was confirmed by percipient witnesses. (*Id.* at p. 110.) The court also relied on the state's maintenance manual, which called for continuous patrolling and monitoring whenever freezing conditions were anticipated, as was the case at the time of the accident. (*Id.* at pp. 104 & 111.) The evidence presented here falls far short of that found sufficient in *Straughter* and fails to raise a triable issue for the reasons stated in the text.

17

## III.  DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

_____

RENNER, J.

We concur:

/S/

_____

MAURO, Acting P. J.

/S/

_____

FEINBERG, J.